## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Matthew Pound, Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn, hereby states as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. Your Affiant, Matthew Pound, is a full-time, salaried law enforcement officer for the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so since May 25, 2014.  I routinely investigate violations of federal criminal statutes, including violations of federal firearms and narcotics laws.  I have specifically investigated violations related to subjects in possession of illegal and altered firearms.  Prior to being a Special Agent with ATF, I was a full-time, salaried law enforcement officer for the Albuquerque Police Department for approximately 9 years.  While at the Albuquerque Police Department, I assisted in the apprehension and investigation of individuals involved in serious violent crimes, including homicide, kidnapping, aggravated battery and assaults, narcotics trafficking, firearm trafficking, and prohibited persons in possession of firearms.   Eight of my years with the Albuquerque Police Department were spent as an officer in the Gang Suppression Unit and a detective in the Gang Unit.  During these years, the majority of my investigations focused specifically on gang crime and gang-motivated crimes, including shootings, homicides, aggravated assaults, and robberies.  Since becoming a Special Agent with ATF, and since being assigned to Denver, Colorado, in 2014, I have assisted the Aurora Police Department Gang Unit in numerous investigations.  I have also spent numerous shifts working with the Aurora Police Department Gang Unit.  While employed by the Albuquerque Police Department, I was assigned to the ATF as a Task Force Officer for approximately 5 years.  I have been involved in the investigation of more than 200 cases involving violations of federal firearms and narcotics laws.   I have written and participated in the execution of over 100 federal and state search warrants involving violent crime, organized crime, illegal firearms possession, and the use and trafficking of narcotics, and armed narcotics trafficking.

2. As an ATF Special Agent, I am familiar with federal criminal laws pertaining to firearms, explosives, and narcotics.  I know that it is a violation of 18 U.S.C. § 922(g)(1) for any person to who has been previously convicted of a felony offense, punishable by a term of imprisonment exceeding one year, to possess a firearm and/or ammunition.

3. The statements contained in this affidavit are based, in part, on information provided by other ATF Special Agents and Task Force Officers, as well as other law enforcement officers, along with my background and experience.  I have included facts necessary to establish probable cause and have not included each and every fact known to me concerning this investigation.  I have not intentionally omitted facts that tend to mitigate probable cause.

4. Based on the following facts, I submit probable cause exists to believe that, on or about September 24, 2022, in the State and District of Colorado, Jeremy Lavon Tate, did knowingly possess a firearm in violation of 18 U.S.C. § 922(g)(1).

## FACTS OF THE INVESTIGATION

5. On September 24, 2022, at approximately 12:22 AM, officers with the Aurora Police Department (APD) were dispatched to the Children's Hospital located at 13123 E. 16th Ave., City of Aurora, State and District of Colorado, in reference to a weapons offense.

6. Responding officers were advised by APD Dispatch that callers were reporting a Black male, later identified as Jeremy Lavon Tate, running through the Children's Hospital holding a firearm.

7. APD officers arrived on scene and observed the following: officers from the University of Colorado Police Department (UCPD) in the process of taking a male associated with Tate into custody, another UCPD officer holding a black semiautomatic pistol which the officer had taken off Tate, while a hospital security guard held Tate down on the front desk of the Children's Hospital.  At this point, APD Officer Jordan placed Tate into custody without incident.

8. After taking Tate into custody, APD officers learned Tate entered the hospital through a secure staff entrance which requires an access card to open.  Tate entered through the secure door by physically forcing the doors to open.  Tate passed through the first set of doors and presumably did the same to bypass a second set of secured doors, which is not in view of security cameras.  Tate approached the third set of doors where Tate became stuck.  A hospital nurse observed Tate stuck in the doors and asked Tate if he needed help. Tate was able to remove himself from between the doors and into the hallway leading to the hospital's front lobby.  The nurse told officers that at this point, she observed Tate with a black handgun in his right hand and saw Tate running towards the front lobby of the hospital.  The nurse said it was at this point that she called police.

9. An APD officer watched security footage which showed Tate gain entry through the doors, however the officer did not see the firearm in Tate's hands.  The officer observed Tate walking towards the front lobby and to the security/front desk, where Tate is seen speaking to the security officer.  Tate is seen talking on a cell phone when UCPD officers arrived, contacted Tate, and removed the black pistol from Tate's waistband.

10. APD officers took possession of the firearm and noted it to have what appeared to be an auto-convertor switch affixed to the rear of the pistol which would allow the firearm to operate in a fully automatic capacity.  The firearm also had a high-capacity magazine inserted into the firearm.  The magazine had the capacity to hold 22 rounds of ammunition and was loaded with 17 rounds in the magazine.  The firearm was loaded with one round in the chamber.

11. On September 26, 2022, your Affiant went to APD Property and Evidence and viewed the firearm seized from Tate.  The firearm is described as a Glock, model 22, .40 caliber semiautomatic pistol with serial number UTF293.  Your Affiant observed the Glock to have an auto-convertor switch affixed to the rear of the frame of the firearm.

12. Your Affiant knows that an auto convertor switch is considered a firearm under the National Firearms Act and needs to be properly registered with ATF.  The auto convertor switch can

      change a semi-automatic Glock pistol or Glock type pistol to a fully automatic pistol, thus requiring registration with ATF.

13. On September 26, 2022, your Affiant took the Glock pistol seized from Tate to the APD firing range. Your Affiant loaded the high-capacity magazine with 17 rounds of .40 caliber ammunition. Your Affiant set the auto-convertor switch to fully automatic mode and conducted a test fire or the firearm. The firearm, with one pull of the trigger, expelled all 17 rounds of ammunition put into the magazine by your Affiant within in a matter of seconds. Through this, your Affiant knows that the firearm possessed by Tate is capable of firing in a fully automatic capacity, and also fits the definition of a firearm under Title 18 United States Code, Section 921(a)(3): any weapon which will, or is designed to, or may readily be converted to expel a projectile by the action of an explosive.

14. Your Affiant conduct a criminal history query of Tate and found that on September 5, 2017, Tate was convicted of the felony crime of Theft $300-$10K in the Cook County Circuit Court, case number 2016CR15400 and was sentenced to 2 years' imprisonment in the Illinois Department of Corrections.

15. Your Affiant contacted ATF SA Pine, who is a qualified expert witness in firearms and ammunition interstate nexus, who told your Affiant that in the opinion of SA Pine, the Glock firearm possessed by Tate on September 24, 2022, was not manufactured in the State of Colorado and therefore traveled in and/or affected interstate and/or foreign commerce prior to being seized from Tate on September 24, 2022.

**CONCLUSION**

16. Based on the above facts, I submit that probable cause exists to believe that, on or about September 24, 2022, in the State and District of Colorado, the defendant, Jeremy Lavon Tate, a previously convicted felon, did knowingly possess a firearm in violation of 18 U.S.C. § 922(g)(1).

I, Matthew Pound, being duly sworn according to law, depose and say that the facts stated in the foregoing affidavit are true and correct to the best of my knowledge, information and belief.

*s/Matthew Pound*
Matthew Pound
Special Agent, ATF

**Affidavit reviewed and submitted by Celeste Rangel Assistant United States Attorney.**

.

Hon. N. Reid Neureiter
United States Magistrate Judge
District of Colorado